PEOPLES BANK & TRUST COMPANY, GENERAL GUARDIAN OF W. L. GROOM, v. TAR RIVER LUMBER COMPANY.

(Filed 18 March, 1942.)

**1. Appeal and Error § 37—**

Where the court finds the facts by consent of the parties, its findings supported by competent evidence are as conclusive as if found by a jury, and are not subject to review on appeal.

**2. Trial § 54—**

Where the parties waive a jury trial and consent that the court hear the cause, the weight of the evidence is for the court, and each of its findings is conclusive if supported by competent evidence.

**3. Limitation of Actions § 13—**

C. S., 416, does not change the character and quality of an acknowledgment or promise necessary to repel the statutes of limitation except to require that the acknowledgment or promise be in writing and signed by the party to be charged.

**4. Same—**

In order to revive a debt which is barred by statutes of limitation, there must be an express unconditional promise to pay same, or a definite unqualified acknowledgment of same as a subsisting obligation from which the law will imply a promise to pay.

**5. Same—**

The law will imply a promise to pay a debt from an acknowledgment of the debt by the debtor as an existing obligation unless the acknowledgment is qualified.

**6. Same—**

A written acknowledgment or promise to pay a debt will bind a corporate debtor if the writing be signed in the name of, or in behalf of the corporate debtor by an authorized agent or officer.

**7. Same—**

In order for an acknowledgment or promise to pay a debt to repel the bar of statutes of limitation it must be made to the creditor himself or to an attorney or agent of the creditor acting on behalf of his principal.

**8. Same—Evidence held sufficient to support finding that secretary-treasurer of corporation was without power to bind corporation by acknowledgment of debt so as to repel bar of statute.**

This action involved a claim against the receiver of a corporation upon two notes executed by the corporation, which claim had been denied by the receiver on the ground that the notes were barred by statutes of limitation. Claimant, the holder of the notes, introduced in evidence two letters signed by the corporation by its secretary-treasurer, one to an officer of a bank, which enclosed a financial statement of the corporation which

listed the notes sued on as liabilities of the corporation and the other letter to a certified public accountant stating that one of the notes held by claimant was included in its liabilities as shown by books but "as to its value and time of payment we are unable to advise." *Held:* Even conceding that the letters, with accompanying financial statement, contained an unqualified acknowledgment of the debt as a subsisting obligation from which the law may imply a promise to pay, the evidence before the court as to the authority of the secretary-treasurer was sufficient to support the court's finding that the secretary-treasurer did not have power to bind the corporation by an acknowledgment, and its judgment disallowing claim on the notes because of the bar of the statutes of limitation, is affirmed.

BARNHILL, J., took no part in the consideration or decision of this case.

APPEAL by Ida Baker Hanes, creditor of defendant, from *Carr, J.,* at October Term, 1941, of NASH.

Civil action in receivership heard upon claim of Ida Baker Hanes filed with and denied by receivers.

In the trial court, upon hearing on exceptions of Ida Baker Hanes to report of receivers of defendant, Tar River Lumber Company, filed at September Term, 1941, in which they decline to approve her claim, represented by two notes of defendant, for that same are barred by statutes of limitation, the parties stipulated that the judge should find all facts with the same effect as if determined by a jury and render judgment thereon.

Ida Baker Hanes offered in evidence these documents: 1. Two notes executed in name of Tar River Lumber Company, by W. L. Groom, president; one, dated 18 March, 1924, payable to Ida Baker Hanes for $5,000.00, two years after date, with interest at 6 per cent per annum, payable semiannually, and the other dated 4 August, 1926, payable to Howard E. Baker for $10,000.00 two years after date, with interest at 6 per cent per annum, payable semiannually, bearing on back this endorsement: "Pay to the order of Ida B. Hanes without recourse, First National Bank & Trust Company of Elmira, by O. N. Reynolds, V. P., as Executor of the estate of Howard E. Baker, deceased."

2. Two letters, signed in name of "Tar River Lumber Company by S. T. Anderson," purporting to be on letterhead stationery of "Tar River Lumber Company, Inc., Wholesale and Retail Dealers in Kiln Dried North Carolina Pine, Poplar and Oak," showing as officers: "W. L. Groom, Pres. and Gen. Mgr.; S. T. Anderson, Secy. and Treas.; W. T. Keeton, Vice-Pres."

The first letter, dated Rocky Mount, N. C., 18 February, 1939, addressed to "Mr. M. D. Thompson, c/o First National Bank & Trust Company, Elmira, N. Y.," reads as follows: "Complying with the request of Mr. I. T. Skeels, Assistant Vice-President, we beg to herewith

hand you copy of our annual financial statement as of Jan. 1st, 1939.
If any explanation needed, we will be glad to give the best we can." At-
tached to and enclosed in this letter was a financial statement of all assets
and liabilities of the Tar River Lumber Company as of 1 January, 1939,
the only pertinent part being "Liabilities" listed as "notes payable to
stockholders, W. L. Groom, $62,077.79; H. E. Baker, dec., $14,087.00,
and Ida B. Hanes, $6,205.20," total "$82,369.99."

The other letter, dated Rocky Mount, N. C., 15 February, 1940, ad-
dressed to "Mr. George H. Wood, C. P. A., Pasadena, Calif.," reads as
follows: "We acknowledge yours of February 7th with reference to
$5,000.00 note held by Mrs. Ida B. Hanes. This note is included in
our liabilities as shown by books. As to its value and time of payment,
we are unable to advise. The writer does not feel you would be justified
in considering income from this note for income tax returns."

The parties stipulated that on 18 February, 1939, the First National
Bank & Trust Company of Elmira, N. Y., was "the financial agent of
Mrs. Ida Baker Hanes, and also a creditor of Tar River Lumber Com-
pany, or its subsidiary, Swansboro Land & Lumber Company."

The receiver offered evidence tending to show substantially these facts:

The Tar River Lumber Company, originally a copartnership, com-
posed of W. L. Groom, Howard E. Baker and J. H. Harris, was incor-
porated in 1908 by them and others, including Ida Baker Hanes, daugh-
ter of Howard E. Baker, and S. T. Anderson, who owned two shares.
Groom was elected president; Baker, treasurer, and Anderson, secretary.
Subsequently, upon death of Baker, the offices of secretary and treasurer
were combined, and Anderson was elected. Under the by-laws of the
corporation the president was empowered to exercise general supervision
and direction over the affairs and all other officers of the corporation.
The by-laws, pertaining to duties of secretary and of treasurer, further
provided that the secretary "shall keep the proper books of account, and
discharge such other duties as pertain to his office and as are prescribed
by the board of directors." In recent years the board of directors was
composed of W. L. Groom, now deceased, who for eight or ten years was
in bad health, and whose general guardian instituted this action; W. T.
Keaton, formerly of Elmira, New York, now of Florida; Mrs. K. J.
Harris, of New York, and S. T. Anderson, of the office of company.

Anderson testified, in part, as follows: "How long Mr. Groom was
in bad health is hard to say, but he was . . . 8 or 10 years. . . . As
he went down I naturally took hold without authority. I paid the bills
when I had the money. I collected the money and made sales to cus-
tomers. As long as he could do it he handled as much of the general
management of the business as he could. After he got so he couldn't,
the burden fell on me. During 1939 and 1940 I was not absolutely in

complete charge. I can't carry dates very well, but I shouldn't say over a year and a half or maybe a year that he had been totally incapacitated. On February 15, 1940, Mr. Groom was not absolutely able to attend to his duties. For the last four or five years Mr. Groom hasn't been able to attend to a lot of things. It is hard for me to answer the question whether if on February 15, 1940, I was not for all general purposes the head of the business. I was there and he was sick. I was doing the best I could with it. Conditions were not as bad on February 18, 1939, as in 1940. I was there and so was he and what he could not do I tried to do . . . The directors met very seldom. Years ago we had stockholders and directors meetings once a year . . . we ran along several years without meeting . . . I think they met in the last two years. Mrs. Harris didn't come down to the meeting. She resigned as a director. I think Mr. Keaton was here. At the time the payment was made on my note and Mr. Groom's note was renewed (in 1939, he thinks) Mr. Groom and I were the active managers of the business. We didn't renew Mrs. Hanes' notes . . . I have never at any time signed a note for the corporation."

Anderson further testified that in February, 1939, the Swansboro Land & Lumber Company, of which Groom was largest stockholder, and in which the Harris family had stock but in which the Baker family had none, was indebted to both the Tar River Lumber Company and the First National Bank of Elmira, New York; that under an arrangement pertaining to timber contract between Tar River Lumber Company and Swansboro Land & Lumber Company, the former was to make certain payments to the bank; and that from then on frequent statements were submitted to the bank in connection with the indebtedness to it. The witness further testified that "at end of each year we made financial statements of the Tar River Lumber Company and perhaps the First National Bank of Elmira, New York, got copies of those statements"; and, further, that neither the president nor directors authorized him to acknowledge any of the corporation's indebtedness to other people; that in 1939 the corporation executed renewal notes for indebtedness to Groom and same were signed by Groom as president and by him as secretary, which he thinks was pursuant to a resolution of the board of directors; and that "the question of renewing Mrs. Hanes' notes was discussed between the president of the corporation and me, and Mr. Groom chose not to renew them."

Upon stipulations and admission in open court, and from documentary and oral evidence presented, the court finds pertinent facts substantially these: 1. Ida Baker Hanes is the holder of the two notes offered in evidence, on which interest has been credited to 18 September, 1930, and to 4 February, 1927, respectively. After the dates to which interest has been so credited, no payments have been made on either of the notes.

2. That "On February 18, 1939, S. T. Anderson, who was secretary-treasurer of Tar River Lumber Company, sent to M. D. Thompson, an officer of First National Bank & Trust Company, of Elmira, N. Y., a financial statement of Tar River Lumber Company, which listed said notes under the heading 'notes payable to stockholders.' The First National Bank & Trust Company of Elmira was the financial agent of Ida Baker Hanes, but was also a holder of stock in Tar River Lumber Company as collateral to loans and was the holder of notes of Swansboro Land & Lumber Company, a subsidiary corporation of Tar River Lumber Company, and was endeavoring to collect the notes of Swansboro Land & Lumber Company through payments by Tar River Lumber Company of the proceeds of timber owned by Swansboro Land & Lumber Company, which was being cut and sawed by Tar River Lumber Company. The letter of Anderson to the bank, and the financial statement which accompanied his letter, were not sent to the bank in connection with any business of Ida Baker Hanes.

3. That "On February 15, 1940, S. T. Anderson, secretary-treasurer, on behalf of Tar River Lumber Company, wrote to Geo. H. Wood, Pasadena, California, who is the personal auditor of Ida Baker Hanes, a letter," offered in evidence.

4. That "The by-laws of Tar River Company provide that its president shall be its active managing official.

5. That "The by-laws of Tar River Lumber Company define the duties of the secretary and the treasurer, but do not give either of said officers any authority to borrow money or pledge the credit of the corporation or to make or alter contracts of the corporation, and no such authority was given to Anderson by any resolution of the Board of Directors as he did not in fact exercise such authority.

6. That "There has been no unconditional acknowledgment in writing within the statutory period of the indebtedness of Tar River Lumber Company to Ida Baker Hanes on the notes referred to.

7. That "S. T. Anderson, as secretary and treasurer of said corporation, did not have power to bind the corporation by such an acknowledgment if the correspondence hereinabove set out should be construed as constituting such an acknowledgment."

Upon these findings of facts the court, being of opinion that the claim of Ida Baker Hanes is barred by the statutes of limitation, adjudged that it be disallowed as claim against the assets of the Tar River Lumber Company now or hereafter distributable by the receivers.

The claimant, Ida Baker Hanes, appeals to Supreme Court and assigns error.

*S. L. Arrington for Ida Baker Hanes, appellant.*
*Battle, Winslow &· Merrell for receivers, appellees.*

WINBORNE, J.   A jury trial having been waived, and the parties having consented that the judge find the facts, the findings of fact, supported by competent evidence, are as conclusive as if found by a jury, and are not subject to review by this Court.   *Branton v. O'Briant,* 93 N. C., 99; *Roberts v. Ins. Co.,* 118 N. C., 429, 24 S. E., 780; *Matthews v. Fry,* 143 N. C., 384, 55 S. E., 787; *Cox v. Boyden,* 175 N. C., 368, 95 S. E., 548; *Tyer v. Lbr. Co.,* 188 N. C., 268, 124 S. E., 305; *Tinker v. Rice Motors,* 198 N. C., 73, 150 S. E., 701; *Brown v. Coal Co.,* 208 N. C., 50, 178 S. E., 858; *Schoenith, Inc., v. Mfg. Co.,* 220 N. C., 390, 17 S. E. (2d), 350; *Bangle v. Webb,* 220 N. C., 423, 17 S. E. (2d), 613.

Upon perusal of the evidence shown in the record on this appeal we are unable to say that there is no competent evidence to support each essential finding of fact.   The weight of such evidence is for the judge, acting in lieu of jury, to determine.

The question, therefore, presented by appellant for decision is reduced to this: Do the letters, either or both, introduced in evidence by creditor, constitute an acknowledgment of the indebtedness sufficient to take the debt out of the operation of applicable statutes of limitation?

The statute, originally enacted in 1868, provides that "No acknowledgment or promise is evidence of a new or continuing contract from which the statutes of limitation run, unless it is contained in some writing signed by the party to be charged thereby . . ."   C. S., 416, formerly CCP (1868), sec. 51, The Code of 1883, sec. 172, The Revisal 1905, sec. 371.

Apart from the requirement that the acknowledgment or promise should be "contained in some writing signed by the party to be charged," the statute, according to decisions on the subject, does not change the character and quality of the acknowledgment or promise theretofore required to repel the statutes of limitation.   *Taylor v. Miller,* 113 N. C., 340, 18 S. E., 504; *Shoe Store Co. v. Wiseman,* 174 N. C., 716, 94 S. E., 452; *Phillips v. Giles,* 175 N. C., 409, 95 S. E., 772.

Decisions of this Court, both before and since the enactment of the statute, C. S., 416, pertinent to the true interpretation of the law as stated by *Hoke, J.,* in *Phillips v. Giles, supra,* are to the effect that in order to revive a debt which is barred by statutes of limitation there should be an express, unconditional promise to pay the same, or there should be a definite, unqualified acknowledgment of the debt as a subsisting obligation and from which the law will imply a promise to pay. *Mastin v. Waugh,* 19 N. C., 517; *Smith v. Leeper* 32 N. C., 86; *Simonton v. Clark,* 65 N. C., 525, 6 Am. Rep., 752.   *Faison v. Bowden, Exr.,* 72 N. C., 405; *Taylor v. Miller, supra; Shoe Store Co. v. Wiseman, supra; Smith v. Gordon,* 204 N. C., 695, 169 S. E., 423, and numerous other cases.

Moreover, it is further declared in *Phillips v. Giles, supra,* that the principle generally prevailing on the subject, and required by the phraseology of the statute itself, C. S., 416, "clearly recognizes that either a promise to pay, or an acknowledgment of the debt as an existent obligation will suffice, unless there be something to qualify the express promise, or to repel that which the law would imply from the definite acknowledgment of the debt as a subsisting obligation."

An acknowledgment or a promise is, in the wording of the statute, required to be "contained in some writing signed by the party to be charged." It would be sufficient, however, if the party to be charged be a corporation, that the writing be signed in the name of or on behalf of the corporation by an authorized agent or officer.

Furthermore, in order to take the debt out of an applicable statute of limitations, an acknowledgment or a promise must be made to the creditor himself, *Thompson v. Gilreath,* 48 N. C., 494; *Parker v. Shuford,* 76 N. C., 219; *Faison v. Bowden, supra; Hussey v. Kirkman,* 95 N. C., 63, or to an attorney, or to an agent of the creditor acting on behalf of his principal. *Kirby v. Mills,* 78 N. C., 124; *Shaw v. Burney,* 86 N. C., 331; *Pope v. Andrews,* 90 N. C., 401.

Applying these principles to the facts as found by the court below, the claim of appellant is confronted with insurmountable obstacles in the way of escape from the operation of statutes of limitation.

In the first place, the letters contain no express, unconditional promise to pay the notes in question. Secondly, if the letters as expressed, with accompanying financial statement, if authorized, be sufficiently definite and explicit as to amount to an unqualified acknowledgment of the debt as a subsisting obligation, from which the law may imply a promise to pay, *Darling v. Brown,* 1 Canada, 360, relied upon by creditor, findings of fact as to authoritative communication are lacking. The court below finds as facts: (1) that even though the First National Bank & Trust Company of Elmira, New York, were the financial agent of creditor, it was also the holder of notes of Swansboro Land & Lumber Company, a subsidiary corporation of debtor, and that the financial statement was not sent to the bank in connection with any business of creditor, and that (2) even though the correspondence (letters) should be construed as constituting an acknowledgment, the secretary and treasurer, who signed the letters, did not have power to bind the corporation by an acknowledgment. The evidence offered is susceptible of such inference, and is sufficient to support the findings.

The judgment below is

Affirmed.

BARNHILL, J., took no part in the consideration or decision of this case.